[Cite as *In re K.G.*, 2015-Ohio-132.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

In re K.G.

Court of Appeals Nos. WD-14-044
WD-14-047

Trial Court No. 2012 JB 0924

**DECISION AND JUDGMENT**

Decided:  January 16, 2015

* * * * *

William F. Hayes, for appellant K.G.

Elizabeth B. Bostdorff, for appellant T.Y.

James R. Weinandy, for CASA/guardian ad litem.

Paul A. Dobson, Wood County Prosecuting Attorney, and
Charles S. Bergman, Assistant Prosecuting Attorney, for appellee
Wood County Department of Job and Family Services.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common

Pleas, Juvenile Division, that terminated the parental rights of appellant mother and

appellant father and granted permanent custody of their child K.G. to appellee Wood

County Department of Job and Family Services ("JFS"/"agency"). For the reasons that follow, the judgment of the trial court is affirmed.[1]

{¶ 2} The record reflects that appellant mother was hospitalized approximately ten days before K.G.'s birth because her boyfriend, appellant father, punched her in the stomach. While in the hospital, mother tested positive for marijuana, cocaine and opiates. Mother admitted smoking marijuana during pregnancy to help her develop an appetite. K.G. was born prematurely on July 3, 2012, in Fostoria, Ohio. Due to various concerns which included testing positive for illegal drugs at birth, the child remained in the hospital until July 14. The child was released from the hospital on an infant breathing monitor. At that time, mother and father moved in with paternal grandfather in Fostoria. Four days later, they were told to leave and moved to Carey, Ohio, to live with maternal grandmother. On August 9, 2012, after fighting between mother and father became a problem, father was told that he would have to leave; mother and father then moved with K.G. to a residence in Fostoria owned by father's brother. Five days later, after more domestic disruptions between appellants, mother moved out with K.G. and into a home with her aunt. Mother contacted police three times on August 14, 2012, to report that she had been assaulted. Three days after that, mother was told she had to leave her aunt's home because mother and father were back together; they moved back to paternal

---

[1] Finding that father's appeal (WD-14-044) and mother's appeal (WD-14-047) involve common questions of law and fact, this court ordered that the two cases be consolidated under WD-14-044 for purposes of appeal pursuant to App.R. 3(B).

2.

grandfather's residence where they were told they could visit but not stay. Mother admitted to the JFS caseworker that they were homeless.

{¶ 3} On August 22, 2012, mother and father were both arrested for domestic violence. On that date, a Wood County prosecuting attorney contacted the court requesting that K.G. be picked up on an emergency basis, citing multiple reports of domestic violence between mother and father. At that time, the state asserted probable cause to believe K.G. was not receiving proper care and that removal was necessary to prevent immediate or threatened physical or emotional harm to the child. The state alleged mother and father were not following through with hospital discharge recommendations regarding K.G., were homeless and were unemployed. The Wood County Court of Common Pleas, Juvenile Division, therefore ordered that K.G. be picked up by JFS and placed in the agency's emergency custody until further order. A guardian ad litem was appointed for the child and a hearing was scheduled for the following day.

{¶ 4} On August 23, 2012, JFS filed a complaint alleging that K.G. appeared to be neglected and requesting that temporary custody be granted to JFS. At a hearing held that day, the trial court found that it was in K.G.'s best interest for temporary custody to continue with the agency and set the matter for a shelter care hearing. At the shelter care hearing on August 27, 2012, the trial court continued temporary custody with JFS.

{¶ 5} An adjudicatory hearing was held on December 3, 2012. At that time, based on the results of genetic testing that had been ordered, appellant father was formally

3.

declared to be the legal father of K.G.  Further, mother and father stipulated to the allegations within the neglect complaint and K.G. was adjudicated a neglected child.

{¶ 6} On January 10, 2013, the initial disposition hearing was held.  Temporary custody of K.G. was continued with JFS and the parents' visitation with K.G. was to be at the discretion of the agency.  The trial court approved a case plan which called for mother and father to attend parenting classes, be assessed for substance abuse and mental health issues and complete recommended counseling, complete domestic violence programming, and obtain employment and stable housing. Both parents were required to submit to random drug screens.

{¶ 7} Review hearings were held in March, April and August 2013.  As a result, temporary custody was continued with JFS.

{¶ 8} In June 2013, K.G. was diagnosed with Hurler's syndrome—a rare disease which can cause a child's organs to grow at an accelerated rate, resulting in brain damage and organ failure.  There is presently no definitive cure and, if left untreated, the disease typically results in death by age seven.  As a result, K.G. underwent a stem cell transplant which offered some hope for a cure; this required hospitalization in Cleveland from August 19 to September 30, 2013.  Upon discharge, K.G.'s treatment team believed the transplant was a success and described the child's prognosis as very good.  However, K.G.'s post-discharge medical needs were extensive and included bi-weekly return trips to the hospital in Cleveland, one or more trips to Toledo facilities each week for follow-up treatment, and ongoing physical and speech therapy.  Additionally, K.G. had to be in a

4.

sterile environment. K.G. currently wears leg and back braces and has shown signs of being developmentally delayed. At the time of the final hearing, K.G.'s daily medical regimen included a minimum of 14 medications; the child's physician testified that failure to continue with all medications could be fatal.

{¶ 9} The agency filed a motion for permanent custody of K.G. on January 21, 2014, and an evidentiary hearing on the motion was held on May 6 and 7, 2014. Mother was present and represented by counsel; father was incarcerated but was represented by counsel. Relevant testimony will be set forth below in our discussion of the parents' assigned errors.

{¶ 10} By judgment entry filed June 3, 2014, the trial court terminated both appellants' parental rights and granted permanent custody of K.G. to the Wood County Department of Job and Family Services. It is from that judgment that both parents appeal.

{¶ 11} Appellant mother sets forth the following three assignments of error:

I. The trial court erred in granting the motion for permanent custody because twenty-two months had not lapsed since the state was granted temporary custody of the minor child.

II. Trial court erred in granting the motion for permanent custody because at the time of the filing of the motion, appellant was in substantial compliance with the case plan and the child could have been placed with appellant within a reasonable period of time.

5.

III. The trial court erred in granting the motion for permanent custody as the court appointed special advocate (CASA)/guardian ad litem acted outside the scope of the Superintendence Rule 48.

{¶ 12} Appellant father sets forth the following two assignments of error:

I. The trial court abused its discretion in awarding permanent custody of K.G. to the Wood County Department of Job and Family Services in that the decision that the child could not be placed with father in a reasonable period of time, and that the award of permanent custody was in the child's best interest is against the manifest weight of the evidence.

II. The ruling of the court that the child had been in the temporary custody of the Wood County Department of Job and Family Services for twelve out of twenty-two months as required by Ohio Revised Code 2151.414(B)(1)(d) was against the manifest weight of the evidence.

{¶ 13} We will address appellant mother's first assignment of error and appellant father's second assignment together as they present the same argument. Both parents argue that the trial court's judgment should be reversed because at the time the motion for permanent custody was filed the child had not been in the agency's custody for 12 out of 22 months. We note that, while K.G. had been in the agency's temporary custody for more than 12 months, only a total of 17 months had passed by the time the motion for permanent custody was filed on January 21, 2014.

6.

{¶ 14} The parents do not dispute that K.G. had been in the temporary custody of JFS for 12 or more months when the agency filed for permanent custody. Rather, their argument focuses on the 22-month requirement set forth in R.C. 2151.414(B)(1)(d). Appellants assert that a full, consecutive 22-month period had not run when the agency filed for permanent custody.

{¶ 15} R.C. 2151.414(B)(1) states, in relevant part, that a court is authorized to grant permanent custody of a child to a Department of Job and Family Services if the court finds by clear and convincing evidence that such an order is in the best interest of the child and that any of the following apply:

> (a) *The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period*, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.414 * * * of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents*. (Emphasis added.)

{¶ 16} Under appellants' logic, a child services agency could never file for permanent custody of a child who is not at least 22 months old, no matter if the child had been in temporary custody for 12 or more months, because the 22-month portion of the rule could not be met. We decline to follow that logic. However, in the event we determine that the trial court's finding that K.G. had been in the custody of the Wood County Department of Job and Family Services for twelve or more months of any consecutive 22-month period was arguably flawed, we find that the trial court's decision as to that issue is not fatal to its final determination in this case.

{¶ 17} In this case, the agency gained temporary custody of K.G. on August 22, 2012. Pursuant to R.C. 2151.414(B)(1), for purposes of permanent custody, the child is to be considered to have entered temporary custody as of October 22, 2012—60 days after removal from the home. Thus, the trial court concluded, the agency was authorized to initiate its request for permanent custody under the R.C. 2151.414(B)(1)(d) standard when the motion was filed. The trial court found that as of January 21, 2014, K.G. had been in the custody of JFS for twelve or more months of any consecutive 22-month period. (Also relevant to the above-mentioned statute, the trial court found that clear and convincing evidence had not been presented to establish that K.G. had been abandoned by either parent and that the child was not orphaned.)

{¶ 18} We note that, in *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d1176, the Ohio Supreme Court noted that an agency is not precluded from moving for permanent custody before a child has been in the agency's temporary custody for at

8.

least 12 months. "*If a ground other than R.C. 2151.414(B)(1)(d) exists to support a grant of permanent custody, the agency may move for permanent custody on that ground.*" *Id.* at ¶ 27. (Emphasis added.)

{¶ 19} It is important at this point to look at the grounds stated by JFS in support of its motion for permanent custody. In the memorandum in support of its motion, the agency stated in part:

> The child has been in the temporary custody of the Department for more than 12 out of 22 months and *the parents have failed to complete the case plan, have failed to remedy the conditions that led to the child's removal from the home. In addition, other factors of R.C. 2151.414(D) and (E) are present*. It is in the child's best interest that permanent custody be placed with the Department and the child is in need of a secure legal placement which cannot be achieved without a grant of permanent custody. (Emphasis added.)

{¶ 20} Further, the trial court's findings include the following:

> In the event [K.G.] is found not to be abandoned, orphaned, or not to have been in the custody of the [JFS] for twelve or more months of a consecutive twenty two [month] period, the Court finds clear and convincing evidence has been presented to demonstrate that [K.G.] cannot be placed with either of the [parents] within a reasonable time or should not

9.

be placed with [K.G.'s] parents. [Ohio Revised Code 2151.414(B)(1)(a) and *Ohio Revised Code 2151.414(E)(1), (4), (13) and (16)*]. (Emphasis added.)

{¶ 21} At that point in its judgment entry, the trial court set forth its highly detailed, comprehensive summary of the evidence in support of its decision as to permanent custody based on findings pursuant to R.C. 2151.414(E)(1), (4), (13) and (16). The trial court's findings will be discussed in detail in our review of appellants' additional assignments of error.

{¶ 22} Thus, we see that the 12 out of 22 months standard was not the only ground upon which the agency based its motion, nor was it the only ground upon which the trial court rendered its decision granting permanent custody to JFS. Based on the foregoing, appellant mother's first assignment of error and appellant father's second assignment of error are not well-taken.

{¶ 23} We next consider appellant mother's third assignment of error in which she asserts that the trial court erred in granting the motion for permanent custody because the child's CASA/guardian ad litem exhibited bias against mother and father throughout the pendency of this matter in the trial court.

{¶ 24} This court has reviewed the entire record of proceedings in the trial court and we find no support for this argument. There is no showing that the trial court in any manner altered its decision based upon any improper actions of the CASA volunteer. The trial court stated in its judgment entry:

10.

[K.G.] is too young to express a preference as to the permanent custody at hand. [K.G.]'s Court Appointed Special Advocate/Guardian ad litem has recommended that permanent custody of [K.G.] should be placed with the Wood County Department of Job and Family Services. *This Court will give the recommendation of the [CASA] no greater or lesser amount of weight as may be allowed by law*. (Emphasis added.)

{¶ 25} The court continued:

The evidence suggests the option of permanent custody was being thought of relatively early in this matter. However, given [K.G.]'s unique and severe medical condition and the demonstrated history known at any particular time in this case, the Court finds this consideration was not necessarily inappropriate or demonstrative of some sort of pre-determination or double standard on the part of the [CASA] or the Department of Job and Family Services. *Attempts by Mother and Father to place the [CASA] essentially on trial are misplaced and appear to be an attempt to distract the Court from the real issue at hand.* Rather, the real focus in this matter should be what is best for [K.G.] and the related actions, inactions, and circumstances of Mother and Father. (Emphasis added.)

{¶ 26} Accordingly, we find that the trial court recognized the fallacy of this argument when it was first raised. Upon consideration, appellant mother's third assignment of error is not well-taken.

{¶ 27} Appellant mother's second assignment of error and appellant father's first assignment of error will be addressed together. Both parents assert the trial court's determination was against the manifest weight of the evidence and argue that K.G. could have been placed with the parents within a reasonable period of time.

{¶ 28} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C. 2151.414(E) exist as to each of the child's parents. If after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs 1-5 of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996). Clear and convincing evidence is that which is sufficient to produce in the

12.

mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 29} The record in this case reflects that the trial court heard extensive testimony on behalf of all parties. K.G.'s foster mother testified at length as to the instruction and education she and foster father underwent when K.G. was released from the hospital after birth and later after the stem cell transplant. Foster parents spent four days at the hospital in Cleveland being trained as to how to care for K.G. and administer the many medications and treatments. At the time of the hearing, K.G. was essentially isolated in the home due to being immunosuppressed. K.G. requires physical therapy and speech therapy and wears leg braces for hip dysplasia as well as a back brace. When asked to describe a typical month caring for K.G., foster mother testified that the month previous to the hearing, the child had 22 medical appointments. She further testified that she and her husband were willing to adopt K.G. if the agency is granted permanent custody.

{¶ 30} K.G.'s primary medical genetics specialist at the hospital in Cleveland testified as to the child's physical condition and prognosis, which he described as very good, providing all medications and other treatments are continued. The physician's assistant who cared for K.G. in the hospital and post-transplant testified in detail as to the continuing outpatient care required and ongoing health issues faced by the child, including graft vs. host disease of the skin, which requires constant care and vigilance, and autoimmune hemolytic anemia, which required blood transfusions.

13.

{¶ 31} K.G.'s speech and physical therapists, who work with the child in-home, testified that K.G. shows signs of being developmentally delayed. K.G. is learning some sign language and progressing with some language skills. The speech therapist stated that a child who has Hurler's syndrome could require a lifetime of speech therapy. K.G.'s physical therapist works with the child on strengthening, balance and coordination. Both therapists work with the foster parents as well.

{¶ 32} Appellants' parent education specialist testified that mother has not successfully completed the initial parenting curriculum due to inconsistent participation over the nearly two years since her first referral in August 2012. Father has not completed the program.

{¶ 33} The trial court also heard testimony from the family's two JFS caseworkers. The initial caseworker testified that K.G. was originally placed in the care of relatives who eventually decided they could no longer care for the child. At that point, K.G. returned to the care of the original foster parents, with whom the child still resides. JFS checked into other relatives; some failed to follow through with the process and others were not approved. According to the initial caseworker, the foster parents were very organized and did very well caring for K.G. from the outset when faced with the child's many medical appointments and health issues. Appellants' visitation with K.G. was inconsistent, although mother attended more often than father, who had periods of incarceration. Mother did not have her own transportation and had to rely on help from friends or family and community transportation. At that time, appellants did not have

14.

stable housing and moved from place to place. Father did not have a job during the first six months and mother had a few jobs, none of which lasted more than a week or two. During the initial caseworker's six months with the family, mother failed 13 of 15 drug screens. The 13 positives were all for marijuana, with two also showing an opiate. Mother admitted that for nearly a year throughout the case she was an active addict and did not comply with substance abuse services. Father did not complete any of his case plan goals during that time other than having two drug and alcohol assessments; he did not follow up with recommended services. Father tested positive for illegal substances on multiple occasions. Father slept a lot when he attended visitations but when he held K.G. his actions were appropriate.

{¶ 34} Neither parent complied with mental health assessments and recommendations. Father's arrest and conviction of domestic violence essentially rendered him non-compliant with the DV treatment portion of his case plan.

{¶ 35} As to the case plan requirement that appellants obtain stable housing and employment, the evidence showed that father did not have stable housing and had no job. At the time of the permanent custody hearing, mother was residing with her mother, who did not have an approved home study, Mother did have a job offer. There was no evidence presented that either parent had been or was unable to work and thus provide monetary support for K.G.

{¶ 36} Mother testified that her second caseworker was not helping her with her case plan as much as the first caseworker because she did not find mother a job and was

15.

not understanding about mother's situation. Mother believes the new caseworker was being "influenced" by the GAL to work toward permanent custody and wanted her to fail. Mother further testified that she needed some more time to complete her case plan, which she could do because she is sober and trying to do what is right. Mother feels there is a conspiracy by the state to keep her from completing her services. Mother accepts responsibility for her failure to complete her case plan "somewhat in the beginning," but does not believe she is responsible for further failure from the time of K.G.'s release from the hospital in September 2013 to the present. As to father's living situation, a friend testified that upon father's release from incarceration he and K.G. could live with her.

{¶ 37} K.G.'s guardian ad litem testified that the child is doing well in the foster home and recommended that permanent custody be awarded to JFS. Mother's mother testified that appellant mother was "trying" and could live with her as long as necessary. Grandmother is unemployed and receiving food stamps. She, in turn, receives financial assistance from her mother.

{¶ 38} At the conclusion of testimony, the trial court granted appellant father permission to submit a written statement to the court within 14 days of the hearing which would be entered as evidence.

{¶ 39} The trial court found, pursuant to R.C.2151.414(E)(1), that clear and convincing evidence demonstrated that following K.G.'s placement outside the home and notwithstanding reasonable case planning and diligent efforts by JFS and others to assist

16.

mother and father, both parents failed continuously and repeatedly to substantially remedy the conditions causing the removal. Further, the trial court found, pursuant to R.C. 2151.414(E)(4), that clear and convincing evidence established that mother and father demonstrated an actual lack of commitment toward K.G. by failing to regularly support, visit or communicate with K.G. when able to do so or by other actions showing an unwillingness to provide an adequate permanent home for their child.

{¶ 40} The trial court further found, pursuant to R.C. 2151.414(E)(13), that father had been repeatedly incarcerated, which prevented him from providing care for K.G. Additionally, the trial court found, pursuant to R.C. 2151.414(E)(16), that "[K.G.]'s special and extensive medical, physical and mental health needs are relevant factors that further support a conclusion that [K.G.] cannot be placed with Mother and Father within a reasonable time or should not be placed with Mother and Father. [K.G.]'s life literally depends on appropriate, consistent, and extensive treatment which Mother and Father are simply unable to provide."

{¶ 41} As to the best interest of K.G., the trial court found, pursuant to R.C. 2151.414(D), that K.G. was in need of a permanent plan and that the foster family was interested in pursuing adoption. The trial court noted that the foster parents "have truly gone above and beyond the normal call in their care for [K.G.] and are completely engaged in K.G.'s treatment needs, medications and appointments." The trial court further found that, while mother and father each produced some evidence in support of their assertions that they have thought about and could provide a proper home for K.G.,

17.

given their actual histories before the court there were significant questions surrounding the speculative plans set forth. Both at the time of the filing of the motion for permanent custody and at the permanent custody hearing, neither parent had the ability to adequately provide for the care and support of K.G. As the trial court found, "[K.G.]'s progress and survival require much more than stated intentions – they require a demonstrated pattern of action and near constant attention."

{¶ 42} Thereupon, the trial court found that clear and convincing evidence establishes that placing K.G. in the permanent custody of the Wood County Department of Job and Family Services is in K.G.'s best interest.

{¶ 43} Based on all of the foregoing, including this court's consideration of the record supporting the trial court's meticulous, thorough and carefully prepared judgment entry, we find that the trial court's decision granting permanent custody of K.G. to the Wood County Department of Job and Family Services was supported by clear and convincing evidence. Accordingly, mother's second assignment of error and father's first assignment error are not well-taken.

{¶ 44} On consideration whereof, the judgment of the Wood County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants equally pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                                         JUDGE

Thomas J. Osowik, J.

                                       _____
Stephen A. Yarbrough, P.J.                              JUDGE
CONCUR.

                                       _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.